UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | * | CRIMINAL NO. 18-128 |
|---|---|---|
| v. | * | SECTION: "L" |
| ALEX MILLER | * | |
| | * | |

\* \* \*

## FACTUAL BASIS

The defendant, **ALEX MILLER** ("MILLER"), has agreed to plead guilty as charged to Counts 1, 5, 8, and 9 of the Superseding Bill of Information pending against him. Should this matter have gone to trial, the government would have proven, through the introduction of competent testimony and other admissible evidence, the following facts, beyond a reasonable doubt, to support the allegations in the Superseding Bill of Information now pending against the defendant:

In 2016, confidential sources informed Special Agents of the Drug Enforcement Administration ("DEA") of the drug trafficking activities of MILLER. Through confidential sources, informants, and investigation, agents learned that MILLER was a heroin trafficker who sold as much as seven (7) gram quantities of heroin on a daily basis to customers in the Bogalusa, Louisiana area.

After identifying MILLER as a heroin trafficker, agents made several controlled purchases of heroin from MILLER, using a confidential source ("CS") and an undercover agent ("UC"). On or about August 10, 2016, under the direction of agents, a CS called MILLER to arrange the purchase of $100.00 worth of heroin. MILLER directed the CS to meet him at the corner of Redmond and Lincoln Streets in Bogalusa. The CS and UC arrived at 935 Lincoln Street and

AUSA
Def.
Def. Atty. SHS

parked in front of a residence next to the passenger side of a blue Nissan Altima occupied by MILLER. The CS approached MILLER in the vehicle and gave him $100.00 in exchange for the heroin. The heroin had a net weight of 0.64 grams, as confirmed by DEA Forensic Chemist Joseph R. Cusick.

On September 2, 2016, under the direction of agents, the CS called MILLER to purchase $100.00 worth of heroin. MILLER agreed to meet the CS on Davis Street in Bogalusa to conduct the transaction. The UC and CS arrived at Davis Street near a residence where a blue Nissan Altima was parked. The CS approached the driver's door of the Nissan and met with MILLER. The CS gave MILLER $100.00 and MILLER gave the CS the heroin. The heroin, analyzed at the DEA laboratory, had a net weight of 0.54 grams, as confirmed by DEA Forensic Chemist Joseph R. Cusick.

After the controlled purchases, United States District Judge Carl J. Barbier authorized a Title III intercept of MILLER'S telephone. The interceptions began on October 20, 2016. During the intercept of MILLER'S phone, agents confirmed MILLER's heroin distribution activities and confirmed that his supplier was Larry DAVIS ("DAVIS"), another heroin distributor in the Bogalusa area.

In one intercepted telephone call on October 29, 2016, MILLER discussed DAVIS's product quality with a customer. During the call, MILLER told the customer, "Alright, that shit straight. Well, what's-his-name got some brown [i.e., heroin]. That shit good as a mother fucker." When the customer asked who, MILLER replied, "La [i.e., DAVIS]. That shit good." The customer responded, "Look, I don't know whatever he cutting it with; my people don't like it." Two days later, on October 31, 2017, MILLER complained to DAVIS about his product: "Yo….my cousin don't love me know more, you dig?" On November 1, 2017, a customer asked

MILLER, "This is new stuff or what's up?" MILLER replied that it was.

After authorizing an intercept of MILLER's telephone and confirming through toll records that MILLER and DAVIS communicated with each other daily, Judge Barbier authorized an intercept of DAVIS's phone, beginning on December 1, 2016. During the intercept of DAVIS's phone, agents intercepted calls between MILLER and DAVIS and further confirmed that MILLER and DAVIS worked together to distribute heroin. Some of the phone calls revealed that DAVIS often sent lower level customers to MILLER for heroin sales. In an intercepted phone call on December 6, 2016, DAVIS told MILLER that he sent a lower level dealer to meet with MILLER. MILLER responded that what he had was gone. In a call on December 8, 2016, DAVIS alerted MILLER that "our people out here" were "looking for you trying to get one." On December 29, 2016, DAVIS told MILLER that he "had a "play" (a larger sale) for MILLER. On January 17, 2017, DAVIS told MILLER, "I got a lot of pop sales calling me, and I'm really ain't trying to fuck with them. But I could let you do it. … Go down the middle on everything." On January 9, 2017, DAVIS complained about too many people "bumping my line," and said he was "not fucking around" because he had too much to lose, but would be "swinging it" to MILLER.

Also during the monitoring of DAVIS's phone, agents intercepted calls between DAVIS and customers unsatisfied with the quality of drugs supplied by DAVIS and calls between DAVIS and sources of supply. On December 12, 2016, a customer complained to DAVIS, "I got a lot of complaints.'' DAVIS responded, "Just bring it to me and I bring it back." DAVIS then met with a source of supply. After meeting the source of supply, DAVIS called the customer and told him, "Something different going on" and told him to bring a "clock" (digital scale). The following day, the customer complained to DAVIS that, "it's still the same," and DAVIS responded that he

3



AUSA
Defendant
Defense Counsel

"talked to the plug," referring to the source of supply.

In a phone call on December 14, 2016, DAVIS spoke to a source of supply who quoted DAVIS a price of "big eight, eight racks," meaning $8,000.00. The following month, on January 20, 2017, DAVIS purchased a quantity of drugs from a source of supply for $9,000.00. After agreeing to the purchase, DAVIS called a customer and asked him for "a few hundred dollars," later saying, "I just got the n***a coming. Um, he fixing to bring me something else." DAVIS then called MILLER and told him, "I got a big ol' thing coming tomorrow," and that to "have enough bread to pay for this motherfucker," DAVIS needed "like nine, nine thousand – I probably got like eight, eighty-two or something." DAVIS then told MILLER, "I could give you a whole motherfucking fourteen" and that "this will have us set for the rest of the month. I'm talking about for the rest of next month, what I'm 'bout to grab half a rack next month."

After confirming the drug activity and relationship between MILLER and DAVIS, agents obtained and executed a search warrant on MILLER'S residence at 1911 Blueberry Street in Bogalusa on February 16, 2017. In the master bedroom of the residence, agents located a pair of MILLER'S pants. Inside one of the pockets was 6.3 grams of heroin, as confirmed by DEA Senior Forensic Chemist Xiu Liu. Inside another pocket was a digital scale. On the dresser in the bedroom was a kitchen scale.

Agents obtained written consent to search MILLER'S vehicle in the driveway of the residence. In the trunk was a Norinco Model SKS, 7.62x39mm caliber semi-automatic rifle, bearing serial number 9225442.

On September 6, 2017, agents made another controlled purchase of heroin from MILLER. Under the direction of agents, a CS contacted MILLER to purchase $300.00 worth of heroin. They

4


AUSA
Defendant
Defense Counsel SHS

agreed to meet at the intersection of Washington and Hickory Streets in Bogalusa. After arriving at the designated location, the CS walked to a blue colored Nissan Altima occupied by MILLER and gave MILLER $300.00 in exchange for 2.0 grams of heroin, as confirmed by DEA Senior Forensic Chemist Jay R. Hoppenwasser.

After MILLER made the controlled purchase, agents obtained an arrest warrant for MILLER. On November 20, 2017, agents arrested MILLER in his vehicle in front of his residence on Blueberry Drive in Bogalusa. In a search incident to arrest, agents located and seized six (6) Suboxone strips and $580.00 in cash from MILLER'S pocket. Also, under the front passenger seat of his vehicle was a Glock Model 22, .40 caliber semi-automatic pistol, bearing serial number MNW198.

MILLER acknowledges that he possessed the firearms found in the vehicle. MILLER further acknowledges that the firearms were manufactured outside the state of Louisiana and thus had to travel through interstate commerce to enter into the state of Louisiana. MILLER also acknowledges that at the times that he possessed each firearm, he knew that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year. Specifically, he was convicted on February 24, 2005, in case number 391802-1, in the 22nd Judicial District Court for the State of Louisiana, for possession of a Schedule II controlled substance, in violation of Louisiana R.S. 40:967(C). He was also convicted on February 22, 2010, in case number 09-CR3-103305, in the 22nd Judicial District Court for the State of Louisiana, for distribution of a Schedule II controlled substance, in violation of Louisiana R.S. 40:967A(1).

For purposes of sentencing, the government and MILLER agree and stipulate that MILLER'S conduct, including the foreseeable conduct of co-conspirators, involved at least 100


AUSA
Defendant
Defense Counsel

grams but less than 400 grams of heroin that he conspired to distribute and possess with intent to distribute during the course of the conspiracy.

                                               _____  7/23/2019
                                               NICHOLAS MOSES          Date
                                               ANDRÉ JONES
                                               Assistant United States Attorneys

_____  7/23/19
ALEX MILLER                              Date
Defendant

_____  7/23/2019
STEPHEN SHAPIRO         Date
Attorney for Defendant